UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| KAREEM LANIER, | : | |
| Petitioner. | : | |
| | : | 18 Civ. 8220 (VEC) |
| - v. - | | S25 15 Cr. 537 (VEC) |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| Respondent. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**THE GOVERNMENT'S OPPOSITION TO KAREEM LANIER'S *PRO SE* PETITION
UNDER 28 U.S.C. § 2255 TO VACATE HIS FIREARMS DISCHARGE CONVICTIONS**

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
One Saint Andrew's Plaza
New York, New York 10007

SAMSON ENZER
GINA M. CASTELLANO
ANDREW C. ADAMS
Assistant United States Attorneys
        - *Of Counsel* -

## **TABLE OF CONTENTS**

I.     PRELIMINARY STATEMENT ........................................................................................ 1

II.    BACKGROUND .......................................................................................................... 3

    A.     Lanier's Offense Conduct ................................................................................. 3

    B.     The S16 Superseding Indictment against Lanier................................................ 3

    C.     Lanier's Guilty Plea to the S25 Superseding Information ................................. 5

    D.     Lanier's Sentencing........................................................................................... 8

    E.     Recent Appellate Decisions ............................................................................... 8

III.   ARGUMENT ............................................................................................................. 12

IV.    CONCLUSION........................................................................................................... 15

## I.   __PRELIMINARY STATEMENT__

The Government respectfully submits this opposition to the petition filed *pro se* by Kareem Lanier, who is serving a 40-year prison sentence based on his plea of guilty under a plea agreement with the Government to firearms discharge and racketeering conspiracy offenses, to vacate his firearms discharge convictions pursuant to Title 28, United States Code, Section 2255 (the "2255 Petition").  Lanier's 2255 Petition should be denied without a hearing.

In his 2255 Petition, Lanier seeks to vacate his convictions, based on his guilty plea under his plea agreement, for discharging a firearm during and in relation to a federal crime of violence — namely, a murder in aid of racketeering — in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii), and for aiding and abetting the discharge of a firearm during and in relation to a federal crime of violence — namely, his participation in aiding and abetting an attempted murder in aid of racketeering — in violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii), 924(c)(1)(C)(i) and 2.  Lanier argues that the Supreme Court's recent decisions in *Johnson* v. *United States*, 135 S. Ct. 2551 (2015) and *Sessions* v. *Dimaya*, 138 S. Ct. 1204 (2018) — which invalidated the residual clauses of other criminal statutes' definitions of "crimes of violence" and "violent felonies" — render the residual clause of the definition of "crime of violence" in Section 924(c) invalid, and that as a result, each of the predicate crimes underlying his Section 924(c) convictions no longer qualifies as a "crime of violence," requiring vacatur of his Section 924(c) convictions.  Lanier further contends that his defense attorneys in this case were constitutionally ineffective for failing to bring a direct appeal raising such challenges to his Section 924(c) convictions.

1

As explained more fully below, the claims on which Lanier's 2255 Petition rest are without merit:

*First*, even if Section 924(c)'s residual clause were invalid after *Johnson* and *Dimaya* — which is not the case — Lanier's Section 924(c) convictions would stand under the statute's force clause, which indisputably remains valid.  Both of the predicate crimes underlying Lanier's Section 924(c) convictions — a murder and an attempted murder in aid of racketeering  — qualify as a "crime of violence" under Section 924(c)'s force clause.  *See United States* v. *Russell*, 05 Cr. 401, 2018 WL 3213274, at *3 (E.D.N.Y. June 29, 2018) (Glasser, J.) (murder is a crime of violence under force clause); *United States* v. *Scott*, 681 F. App'x 89, 95 (2d Cir. 2017) (attempted murder is a crime of violence under force clause).  None of Lanier's Section 924(c) convictions depend on the statute's residual clause, and thus his arguments challenging the residual clause cannot undermine the other, independent provisions of the statute that support those convictions.  Accordingly, those arguments furnish no basis for disturbing the Section 924(c) convictions challenged by Lanier's 2255 Petition.

*Second*, because Lanier's arguments challenging his Section 924(c) convictions fail as a matter of law, it follows that his counsel were not constitutionally ineffective for declining to assert those arguments on direct appeal.  Since it would have been futile to raise such arguments on direct appeal, Lanier cannot show, as his burden, that his counsel were constitutionally ineffective for declining to raise them.  Furthermore, even if Lanier's counsel had raised and prevailed on those arguments on direct appeal (which is not the case), the result under his plea agreement would be the reinstatement of a superseding indictment charging him with murder in aid of racketeering and other charges, exposing him to the prospect of a virtually certain trial conviction on crimes carrying a mandatory minimum sentence of life (plus thirty years) in prison.  As a result, it was prudent —

2

not unprofessional — of his counsel to decline to take any actions, such as a direct appeal, that would risk placing in jeopardy the substantially more favorable 40-year sentence imposed on Lanier as a result of the plea agreement that his counsel negotiated on his behalf and that he voluntarily executed.  As such, Lanier cannot show that any of the claimed errors by his counsel caused him to suffer any prejudice, a showing that he must make to prevail on his ineffective assistance claims.

For these reasons, as explained more fully below, Lanier's 2255 Petition should be denied without a hearing.

## II.     BACKGROUND

### A.     Lanier's Offense Conduct

A detailed account of Lanier's offense conduct is set forth in the Government'sentencing submission (Dckt. 1225) filed December 3, 2017 in advance of Lanier's sentencing in this case.[1] To avoid unnecessary repetition, that submission is incorporated by reference as through fully set forth herein.

### B.     The S16 Superseding Indictment against Lanier

On February 15, 2017, the Government unsealed a Superseding Indictment, numbered S16 15 Cr. 537 (VEC), containing the following counts against Lanier:  (1) a racketeering conspiracy count charging Lanier with agreeing with others from in or about 2005 through in or about August 2016 to participate in the criminal racketeering enterprise known as the "Young Gunnaz" or "YGz" gang through a pattern of racketeering activity including his commission of the murder of Dykeem Etheridge by shooting and killing Etheridge in the Bronx on or about January 24, 2011 and other

---

[1]  "Dckt." refers to a docket entry in the criminal case against Lanier captioned *United States* v. *Kareem Lanier et al.*, 15 Cr. 537 (VEC) before this Court.

specified overt acts in furtherance of the conspiracy in violation of Title 18, United States Code, Section 1962(d), which carried a maximum potential sentence of life imprisonment; (2) a substantive murder in aid of racketeering count charging Lanier with murdering Etheridge in the Bronx on or about January 24, 2011 in order to gain entrance into, or maintain, or increase his position in the YGz racketeering enterprise in violation of Title 18, United States Code, Section 1959(a)(1), which carried a mandatory minimum sentence of life imprisonment and a maximum potential sentence of death; (3) a substantive firearms count charging Lanier with causing the murder of Etheridge through the use of a firearm during and in relation to a federal crime of violence, namely the murder of Etheridge in aid of racketeering, in violation of Title 18, United States Code, Section 924(j)(1), which carried a mandatory minimum sentence of five years in prison and a maximum potential sentence of life in prison that would be required to run consecutively to any other sentence imposed; and (4) a firearms count charging Lanier with using and carrying firearms during and in relation to a federal crime of violence, namely the YGz racketeering conspiracy, several of which were brandished and discharged on multiple occasions, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i), (ii) and (iii) as well as 924(c)(1)(C)(i) and 2, which carried a mandatory minimum sentence of twenty-five years in prison and a maximum potential sentence of life in prison that would be required to run consecutively to another other sentence imposed.

Two experienced members of this Court's Criminal Justice Act Panel, a group of criminal defense attorneys with proven experience and competency in the field of federal criminal defense work who are selected by Judges of this Court to represent indigent defendants in this District, were appointed by this Court to represent Lanier in this case: Glenn A. Garber, Esq., was appointed as lead defense counsel for Lanier, and Mitchell J. Dinnerstein, who has extensive

4

experience representing defendants charged with death-eligible offenses, was appointed as learned counsel for Lanier.

After Lanier was arraigned on the original racketeering indictment in this case, the Government produced voluminous discovery materials and made detailed disclosures to Lanier about the evidence that the Government would present at trial — including the charging documents against Lanier, the Government's initial and supplemental enterprise letters filed November 28, 2016 (Dckt. 577), December 9, 2016 (Dckt. 596), and May 3, 2017 (Dckt. 937) and the Government's motions *in limine* on December 13, 2016 (Dckt. 609) — from which Lanier and his counsel could discern all or virtually all of the cooperating witnesses that the Government planned to call against him, and the other proof of Lanier's guilt at the Government's disposal.  From these disclosures, it was apparent that the proof of Lanier's guilt was overwhelming.

### C.     Lanier's Guilty Plea to the S25 Superseding Information

On May 11, 2017 — about two months before Lanier was scheduled to proceed to trial on July 17, 2017 — the Attorney General authorized and directed the Government not to seek the death penalty against Lanier.  (Dckt. 966.)

Rather than face a trial on all the charged against him in the S16 Indictment — in which the Government would have been able to introduce powerful evidence of Lanier's guilt, exposing him to a mandatory minimum term of life (plus thirty years) in prison following a trial conviction on all counts — Lanier reached a plea agreement with Government (a copy of which is attached as Exhibit A) that he signed on June 12, 2017.

Under the plea agreement, Lanier agreed to plead guilty to all of the charges set forth in a Superseding Criminal Information, numbered S25 15 Cr. 537 (VEC) (a copy of which is attached as Exhibit B), containing the following counts against Lanier:  (1) Count One was a firearms count

charging Lanier with using and carrying on or about January 24, 2011 a firearm, which was discharged, during and in relation to a federal crime of violence — "namely, [Lanier's] murder of Dykeem Etheridge by shooting and killing Etheridge in . . . the Bronx, New York for the purpose of maintaining and increasing [Lanier's] position in a racketeering enterprise styled as a street gang known as the 'Young Gunnaz' or 'YGz,' that engaged in a pattern of violent racketeering activities including murders, attempted murders, robberies, and other crimes of violence (the 'YGz Racketeering Enterprise'), in violation of Title 18, United States Code, Sections 1959(a)(1) and 2" (S25 Information at ¶ 1) — and with possessing that firearm, which was discharged, in furtherance of that federal crime of violence, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii) and 2, which carried a mandatory minimum sentence of ten years in prison and a maximum potential sentence of life in prison that was required to run consecutively to another other sentence imposed; (2) Count Two was a firearms count charging Lanier with aiding and abetting the using and carrying on or about July 3, 2011 of a firearm, which was discharged, during and in relation to a federal crime of violence — "namely, [Lanier's] participation in aiding and abetting the attempted murder of Jamel Cobbs, a/k/a 'Murder Mel,' by encouraging and assisting another member of the YGz Racketeering Enterprise in shooting Cobs in an attempt to kill Cobbs . . . in the Bronx, New York for the purpose of maintaining and increasing [Lanier's] position in the YGz Racketeering Enterprise, in violation of Title 18, United States Code, Sections 1959(a)(5) and 2" (S25 Information at ¶ 2) — and with aiding and abetting the possession of that firearm, which was discharged, in furtherance of that federal crime of violence, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii), 924(c)(1)(C)(i) and 2, which carried a mandatory minimum sentence of twenty-five years in prison and a maximum potential sentence of life in prison that was required to run consecutively to another other sentence imposed; and (3) Count

6

Three charged Lanier with conspiring with others from in or about 2010 through in or about 2017 to breach the federal racketeering laws by participating in the YGz Racketeering Enterprise through a pattern of racketeering activity in violation of Title 18, United States Code, Section 371, which carried a maximum potential sentence of five years in prison.

The Plea Agreement thus reduced Lanier's sentencing exposure from a mandatory minimum of life (plus thirty years) in prison following a trial conviction on all of the counts in the S16 Indictment, to a total mandatory minimum sentence of thirty-five years in prison for Counts One and Two of the S25 Information. As part of his plea agreement, the Government and Lanier stipulated that the advisory United States Sentencing Guidelines recommend a sentence of 40 years of imprisonment for Lanier, with a mandatory minimum of thirty-five years in prison that was required to run consecutively to any other term of imprisonment, including a prior five-year federal narcotics sentence that Lanier was serving at the time of his arrest in this case (the "Stipulated Guidelines Sentence"). The Government and Lanier agreed as part of the plea agreement not to seek a sentence above or below the Stipulated Guidelines Sentence, and the Government agreed to move to dismiss any and all open counts against Lanier at sentencing (including the counts in the S16 Indictment).

The plea agreement provided, however, that if Lanier's conviction following his plea of guilty under the plea agreement were later vacated for any reason, then any prosecution that was not time-barred by the applicable statute of limitations on the date of the signing of the plea agreement (including any counts that the Government had agreed to dismiss at sentencing pursuant to the plea agreement) may be commenced or reinstated against Lanier, notwithstanding the expiration of the statute of limitations between the signing of the plea agreement and the commencement or reinstatement of such prosecution.

On June 12, 2017, Lanier entered a plea of guilty pursuant to the plea agreement, in a proceeding before this Court that complied in all respects with Rule 11 of the Federal Rules of Criminal Procedure.

### D.      Lanier's Sentencing

On December 8, 2017, this Court sentenced Lanier to a total of 40 years in prison consecutive to his prior five-year federal narcotics sentence.  Specifically, the Court sentenced Lanier to ten years of imprisonment on Count One of the S25 Information, twenty-five years of imprisonment on Count Two of the S25 Information, and five years of imprisonment on Count Three of the S25 Information, with the sentence on Count One to run consecutively to Lanier's prior five-year narcotics sentence and the sentence on Count Three, and the sentence on Count Two to run consecutively to the sentence on Count One.  Lanier is presently incarcerated at the United States Penitentiary in Hazelton, West Virginia serving his sentence in this case, with an expected release date of September 23, 2048.

### E.      Recent Appellate Decisions

In *Johnson* v. *United States*, 135 S. Ct. 2551 (2015), the Supreme Court ruled that the portion of the Armed Career Criminal Act defining the term "violent felony" to include any felony that "involves conduct that presents a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii), was unconstitutionally vague.  *See Johnson*, 135 S. Ct. 2557-60.  Earlier this year, in *Sessions* v. *Dimaya,* 138 S. Ct. 1204 (2018), the Supreme Court extended *Johnson*'s holding, ruling that the definition of "crime of violence" found in 18 U.S.C. § 16(b) suffered from the same vagueness problems that *Johnson* had found to be fatal to Section 924(e)(2)(B)(ii), rendering Section 16(b) unconstitutional as well.  *Dimaya*, 138 S. Ct. 1204.  The Supreme Court explained that Section 16(b) both "calls for a court to identify a crime's 'ordinary case' in order to

8

measure the crime's risk" and also creates "uncertainty about the level of risk that makes a crime 'violent.'" *Dimaya*, 138 S. Ct. at 1215.

Following the Supreme Court's rulings in *Johnson* and *Dimaya*, defendants convicted of firearms offenses in violation of Title 18, United States Code, Section 924(c) have made arguments seeking to apply the reasoning of those rulings to Section 924(c).[2]  As relevant here, Section 924(c) imposes a mandatory consecutive term of imprisonment when a defendant uses or carries a firearm during, or possesses a firearm in furtherance of, a federal crime of violence.  The statute defines "crime of violence" as a federal felony that:

> (A)  has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B)  that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).  Section 924(c)(3)(A) is commonly referred to as the "force clause," while Section 924(c)(3)(B) is commonly referred to as the "residual clause" or as the "risk-of-force clause."

In *United States* v. *Hill*, 890 F.3d 51 (2d Cir. 2018), the Second Circuit, post-*Dimaya*, held that a substantive Hobbs Act robbery — in violation of 18 U.S.C. § 1951 — is *categorically* a crime of violence within the definition of Section 924(c)(3)(A)'s force clause.  The Circuit explained that it would apply the categorical approach, which requires courts to "identify 'the minimum criminal conduct necessary for conviction under a particular statute.'"  *Id.* at 55 (quoting *United States* v. *Acosta*, 470 F.3d 132, 135 (2d Cir. 2006)).  Using the categorical approach, courts

---

[2]  Many such arguments come up in the murder statute set forth in 18 U.S.C. § 924(j)(1). Because Section 924(j)(1) incorporates Section 924(c), and that gives rise to the same argument, this brief will just refer to Section 924(c).

must "look only to the statutory definitions—*i.e.*, the elements—of [the] . . . offense[], and *not* to the particular [underlying] facts." *Id.* (quoting *Descamps* v. *United States*, 570 U.S. 254, 261 (2013) (alterations and emphasis in original)).  However, the Circuit explained "that to show a predicate conviction is not a crime of violence 'requires more than the application of legal imagination to [the] … statute's language.'"  *Id.* at 56 (quoting *Gonzales* v. *Duenas-Alvarez*, 549 U.S. 183, 193 (2007)). "To show that a particular reading of the statute is realistic, a defendant 'must at least point to his own case or other cases in which the . . . courts in fact did apply the statute in the . . . manner for which he argues.'" *Id.* (quoting *Duena-Alvarez*, 549 U.S. at 193). Applying a categorical analysis — and disposing of defendant Hill's speculative hypotheticals of means by which someone could commit a Hobbs Act robbery — the Circuit found that Section 1951(b)(1)'s requirement that the robbery be accomplished by means of "actual or threatened force," "violence," or "fear of injury" categorically satisfies Section 924(c)'s force clause. *Id.* at 57–60.

More recently, in *United States* v. *Barrett*, — F.3d —, Docket No. 14-2641, 2018 WL 4288566 (2d Cir. Sep. 10, 2018), the Second Circuit found that: (1) a conspiracy to commit a Hobbs Act robbery, 18 U.S.C. § 1951, is categorically a crime of violence under Section 924(c); and (2) in the alternative, the logic in *Johnson* and *Dimaya* demands that courts apply a conduct-specific approach, as opposed to a categorical approach, to Section 924(c)'s residual clause, which would avoid constitutional concerns and therefore saves the clause.

First, the Circuit found that, in considering whether a conspiracy to commit a crime constitutes a crime of violence under Section 924(c), a court can "apply[] the elements of that crime to § 924(c)(3)(A) together with § 924(c)(3)(B), in short, by following the traditional categorical approach." *Barrett*, 2018 WL 4288566 at *8.  If the object offense of a crime is not

itself "a categorically violent crime under § 924(c)(3)(A)," the conspiracy to commit that crime is not categorically a crime of violence. *Id.* However, "'[c]oncerted action both increases the likelihood that the criminal object will be successfully attained and decreases the probability that the individuals involved will depart from their path of criminality.'" *Id.* at *9 (quoting *Callanan* v. *United States*, 364 U.S. 587, 593 (1961)). Logically, therefore, "the agreement element means, '*in each case* that the [Hobbs Act robbery conspiracy] crime covers,' the risk of force is present." *Id.* (quoting *Dimaya*, 138 S. Ct. at 1211 (*Barrett*'s emphasis and alteration)). Accordingly, the Second Circuit concluded that, where "the elements establish an object offense as a categorical crime of violence under § 924(c)(3)(A), the conspiracy itself—by virtue of its agreement element—is a categorical crime of violence under § 924(c)(3)(B)." *Id.* at *9 n.9.

Second, the Circuit found that:

> Even if the elements of Hobbs Act robbery conspiracy did not thus establish it as a crime of violence on a traditional categorical application of § 924(c)(3)(A) and § 924(c)(3)(B), … Section 924(c)(3)(B) can be applied to a defendant's case-specific conduct, with a jury making the requisite findings about the nature of the predicate offense and the attending risk of physical force being used in its commission. Such a conduct-specific approach avoids both the Sixth Amendment right-to-trial and due process vagueness concerns identified in *Dimaya* and *Johnson*.

*Barrett*, 2018 WL 4288566 at *9. The Circuit distinguished the categorical analysis used by the Supreme Court in *Johnson* and *Dimaya*, explaining that those cases involved "*judicial* identification of what crimes (most often, state crimes) of *prior* conviction fit federal definitions of violent crimes so as to expose a defendant to enhanced penalties or other adverse consequences in *subsequent* federal proceedings," whereas Section 924(c)'s residual clause "defines a predicate offense for a crime of *pending* prosecution." *Barrett*, 2018 WL 4288566 at *12 (*Barrett*'s emphasis). Because Section 924(c)(3) "pertains only to § 924(c)(1) crimes of *pending*

11

prosecution[,] . . . a conduct-specific identification of a predicate offense as a crime of violence can be made without raising either of the constitutional concerns that have informed the Supreme Court's categorical-approach jurisprudence." *Barrett*, 2018 WL 4288566 at *12 (*Barrett*'s emphasis). "Accordingly, . . . a § 924(c)(3)(B) determination can be made by a trial jury based on a defendant's real-world conduct without raising either due process or Sixth Amendment concerns." *Barrett*, 2018 WL 4288566 at *14. Finally, the Circuit found that, even though the jury was not asked to determine whether the defendant's conduct satisfied Section 924(c)(3)(B)'s requirements, it was subject to harmless-error analysis. *Id.* The Circuit determined the "real-world evidence can only support a finding that the charged conspiracy, by its nature, involved a substantial risk of the use of physical force," citing the violence used during the conspiracy, and, therefore, "the failure to submit the § 924(c)(3) inquiry to the jury is necessarily harmless error beyond a reasonable doubt." *Id.*

## III.   <u>ARGUMENT</u>

In his 2255 Petition, Lanier argues that the Supreme Court's recent decisions in *Johnson* and *Dimaya* render the residual clause of the definition of "crime of violence" in Section 924(c) invalid, and that as a result, each of the predicate crimes underlying his Section 924(c) convictions on Counts One and Two of the S25 Information no longer qualifies as a "crime of violence," requiring vacatur of his Section 924(c) convictions. Lanier further contends that his defense attorneys in this case were constitutionally ineffective for failing to bring a direct appeal raising such challenges to his Section 924(c) convictions.

These claims fail as a matter of law.

*First*, even if Section 924(c)'s residual clause were invalid after *Johnson* and *Dimaya* — which is not the case — Lanier's Section 924(c) would stand under the statute's force clause,

which indisputably remains valid. The predicate crime underlying Lanier's Section 924(c) conviction on Count One of the S25 Information was his commission of a murder in aid of racketeering in violation of Title 18, United States Code, Section 1959(a)(1), which has an element requiring the use of force against the person of another and thus qualifies as a "crime of violence" under Section 924(c)'s force clause. *See, e.g.*, *United States* v. *Russell*, 05 Cr. 401, 2018 WL 3213274, at *3 (E.D.N.Y. June 29, 2018) (Glasser, J.) (rejecting defendant's *Johnson*/*Dimaya* challenge to a Section 924(c) conviction predicated on a Section 1959(a)(1) murder in aid of racketeering because "murder, no matter the degree, entails a 'use . . . of physical force' sufficient to trigger the [force] clause of § 924(c)"). Similarly, the predicate crime underlying Lanier's Section 924(c) conviction on Count Two of the S25 Information was his participation in aiding and abetting an attempted murder of a victim in aid of racketeering by encouraging and assisting a confederate in shooting the victim in an attempt to kill the victim in violation of Title 18, United States Code, Sections 1959(a)(5) and 2, another offense that qualifies as a "crime of violence" under Section 924(c)'s force clause. *See, e.g.*, *United States* v. *Scott*, 681 F. App'x 89, 95 (2d Cir. 2017) (*Scott*'s ellipses) ("[a]ttempted murder in the second degree is a crime unmistakably involving 'an attempted use . . . of physical force' within § 924(c)(3)(A)"). Accordingly, there is no basis for disturbing the Section 924(c) convictions challenged by Lanier's 2255 Petition.

*Second*, because Lanier's arguments challenging his Section 924(c) convictions fail as a matter of law, it follows that his counsel were not constitutionally ineffective for failing to assert those arguments on direct appeal. Since it would have been futile to raise such arguments that were doomed to fail on direct appeal, Lanier cannot show, as his burden, that his counsel was

constitutionally ineffective for declining to raise them.[3]   *See Forbes* v. *United States*, 574 F.3d

101, 106 (2d Cir. 2009) (appellate counsel was not ineffective for failing to raise meritless claim

on direct appeal: "[i]t is well established that the failure to include a meritless argument does not

fall outside the wide range of professionally competent assistance to which a defendant is entitled"

(brackets, citations and quotation marks omitted)).   Furthermore, if Lanier's counsel had raised

and prevailed on those arguments on direct appeal, the result under his plea agreement would be

the reinstatement of the S16 Indictment's murder in aid of racketeering and other charges against

him, exposing him to the prospect of a trial at which a conviction on all counts would be virtually

certain in light of the overwhelming evidence of Lanier's guilt, resulting in a mandatory minimum

sentence of life (plus thirty years) in prison.   As a result, it was prudent — not unprofessional —

of his counsel to decline to take any actions, such as an appeal, that would risk placing in jeopardy

the substantially more favorable sentence imposed on Lanier as a result of his plea agreement.   As

such, Lanier cannot show that any of the claimed errors by his counsel caused him to suffer any

prejudice, a showing that he must make to prevail on his ineffective assistance claims.   *See Forbes*,

574 F.3d at 106 (defendant was not prejudiced by appellate counsel's failure to challenge his guilty

---

[3]  To prevail on a claim of ineffective assistance of counsel, a defendant must both (1) show  that his counsel's representation "fell below an objective standard of reasonableness" under "prevailing professional norms" and overcome a "strong presumption" that his counsel's conduct was reasonable, and (2) "affirmatively prove prejudice" by showing that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. *Strickland* v. *Washington*, 466 U.S. 688, 688–89, 693-94 (1984).  Only if both elements are satisfied can a defendant demonstrate that his counsel "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and that the defendant was, as a result, deprived of a fair proceeding. *Id.* at 687.  The *Strickland* standard is used to evaluate the effectiveness of both trial counsel and appellate counsel. *See, e.g.*, *Claudio* v. *Scully*, 982 F.2d 798, 803 (2d Cir. 1992); *accord Smith* v. *Murray*, 477 U.S. 527, 535 (1986).

14

plea where defendant "would likely have ended up in a worse position than he now finds himself

had he been allowed to withdraw his plea").

**IV.**     **CONCLUSION**

      For the reasons set forth above, the *pro se* 2255 Petition filed by Kareem Lanier should be

denied without a hearing.  In addition, because Lanier has not made a substantial showing of the

denial of a constitutional right, no certificate of appealability should issue.

Dated: New York, New York
       November 13, 2018

                    Respectfully submitted,

                    GEOFFREY S. BERMAN
                    United States Attorney for the
                    Southern District of New York

By:        /s_____
                    Samson Enzer
                    Gina M. Castellano
                    Andrew C. Adams
                    Assistant United States Attorneys
                    Tel: 212-637-2342

Encls.

Cc:

Kareem Lanier
B.O.P. Inmate Reg. No. 69000-054
United States Penitentiary Hazelton
1640 Sky View Drive
Bruceton Mills, West Virginia 26525

15