

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 11, 2017

**BY ELECTRONIC MAIL**                                  **ORIGINAL**

Glenn A. Garber, Esq.
Mitchell J. Dinnerstein, Esq.
233 Broadway, Suite 2370
New York, New York 10279

Re: *United States* v. *Kareem Lanier*, S25 15 Cr. 537 (VEC)

Dear Messrs. Garber and Dinnerstein:

On the understandings specified below, the Office of the United States Attorney for the Southern District of New York (the or this "Office") will accept a guilty plea from defendant Kareem Lanier, a/k/a "Reem," a/k/a "Black" (the "defendant") to Counts One through Three of the above-referenced superseding criminal Information (the "Information").

Count One of the Information charges the defendant with knowingly using and carrying a firearm, which was discharged, during and in relation to a federal crime of violence — namely, the murder of Dykeem Etheridge on or about January 24, 2011 in the Bronx, New York for the purpose of maintaining and increasing the defendant's position in a racketeering enterprise styled as a street gang known as the "Young Gunnaz" or "YGz" that engaged in a pattern of violent racketeering activities including murders, attempted murders, robberies, and other crimes of violence (the "YGz Racketeering Enterprise") in violation of Title 18, United States Code, Sections 1959(a)(1) and 2 — and possessing said firearm in furtherance of that federal crime of violence, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii) and 2. Count One carries a maximum sentence of life imprisonment; a mandatory minimum sentence of ten years' imprisonment, which must run consecutively to any other sentence imposed, including any sentence imposed in connection with Counts Two and Three of the Information and any prior sentences that the defendant is currently serving; a maximum term of supervised release of five years; a maximum fine, pursuant to Title 18, United States Code, Section 3571, of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to a person other than the defendant resulting from the offense; and a mandatory $100 special assessment. In connection with his guilty plea to Count One, the defendant agrees to admit that for the purpose of maintaining or increasing his position in the YGz Racketeering Enterprise, he murdered Dykeem Etheridge on or about January 24, 2011 by shooting and killing Etheridge during an effort by the defendant and other members of the YGz Racketeering Enterprise to attack members of a rival gang referred to herein as the "Courtlandt Avenue Crew" (the "CAC") in the vicinity of Courtlandt Avenue between 153rd and 154th Streets in the Bronx, New York.

Count Two of the Information charges the defendant with knowingly aiding and abetting the use and carrying of a firearm, which was discharged, during and in relation to a federal crime

of violence — namely, the defendant's participation in aiding and abetting the attempted murder of rival CAC member Jamel Cobbs, a/k/a "Murder Mel" on or about July 3, 2011 in the Bronx, New York for the purpose of maintaining and increasing the defendant's position in the YGz Racketeering Enterprise in violation of Title 18, United States Code, Sections 1959(a)(5) and 2 — and the possession of said firearm in furtherance of that federal crime of violence, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii), 924(c)(1)(C)(i) and 2.  Count Two carries a maximum prison sentence of life; a mandatory minimum sentence of twenty-five years' imprisonment, which must run consecutively to any other sentence imposed, including any sentence imposed in connection with Counts One and Three of the Information and any prior sentences that the defendant is serving; a maximum term of supervised release of five years; a maximum fine, pursuant to Title 18, United States Code, Section 3571, of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to a person other than the defendant resulting from the offense; and a mandatory $100 special assessment.  In connection with his with his guilty plea to Count Two, the defendant agrees to admit that for the purpose of maintaining or increasing his position in the YGz Racketeering Enterprise, he aided and abetted an attempted murder of rival CAC member Jamel Cobbs, a/k/a "Murder Mel," on or about July 3, 2011 in the vicinity of Park Avenue and 158th Street in the Bronx, New York.

Count Three charges the defendant participating in a conspiracy from in or about 2010 through in or about 2017 to breach the racketeering laws of the United States, in violation of Title 18, United States Code, Section 371, and carries a maximum term of five years' imprisonment; a maximum term of supervised release of three years; and a maximum fine, pursuant to Title 18, United States Code, Section 3571 of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense; and a $ 100 mandatory special assessment.  In connection with his guilty plea to Count Three, the defendant agrees to admit that he participated in a conspiracy to conduct the affairs of the YGz Racketeering Enterprise through a pattern of violent racketeering activities including murders, attempted murders, robberies, and other crimes of violence, and that as part of his involvement in this racketeering conspiracy, the defendant participated in the following crimes (in addition to those charged in Counts One and Two of the Information):  (a) on or about July 3, 2011, while the defendant and another member of the YGz Racketeering Enterprise were fleeing from their attempted murder of rival CAC member Jamel Cobbs, a/k/a "Murder Mel," Lanier's co-conspirator shot and killed Curtis Smith, a bystander, in the vicinity of Park Avenue and 158th Street in the Bronx, New York; (b) on or about October 17, 2011, Lanier provided a firearm to another member of the YGz Racketeering Enterprise, who in turn used this weapon to participate in a shootout with members of a rival gang known as "18 Park" that resulted in the fatal shooting of 18 Park member Devon Jackson, a/k/a "Ross," in the vicinity of 346 East 146th Street between Third and College Avenues in the Bronx, New York; (c) on or about December 22, 2011, after several other members of the YGz Racketeering Enterprise participated in the murder of rival CAC member Taisheem Ferguson, a/k/a "Trey" near Morris Avenue and 151st Street in the Bronx, New York, the defendant helped two of the participants in the murder flee from the scene of the murder; and (d) from in or about 2010 through in or about 2012, the defendant participated in a conspiracy with other members of the YGz Racketeering Enterprise to distribute 28 grams or more of crack cocaine in the vicinity of Maria Lopez Plaza near Morris Avenue and 151st Street in the Bronx, New York.

In addition to the foregoing, the Court must order restitution as specified below.

The total maximum term of imprisonment on Counts One through Three of the Information is life, with a mandatory minimum term of thirty-five years for Counts One and Two, which must run consecutively to any other term of imprisonment, including any term of imprisonment of up to five years of imprisonment imposed for Count Three as well as any term of imprisonment that the defendant is currently serving as a result of any of his prior sentences (such as his prior sentence of five years of imprisonment that was imposed based on his below-described narcotics conspiracy conviction in the United States District Court for the Southern District of New York).

In consideration of the defendant's plea to the above offenses, the defendant will not be further prosecuted criminally by this Office (except for criminal tax violations, if any, as to which this Office cannot, and does not, make any agreement) for: (1) his use, carrying, and possession of a firearm, which was discharged, on or about January 24, 2011, in connection with his participation in the murder of Dykeem Etheridge to maintain or increase his position in the YGz Racketeering Enterprise, as charged in Count One of the Information; (2) his aiding and abetting the use, carrying, and possession of a firearm, which was discharged, on or about July 3, 2011, in connection with his participation in aiding and abetting the attempted murder of rival CAC member Jamel Cobbs, a/k/a "Murder Mel" to maintain or increase his position in the YGz Racketeering Enterprise, as charged in Count Two of the Information; (3) his involvement in a conspiracy to conduct or participate in the affairs of the YGz Racketeering Enterprise through a pattern of violent racketeering activity, as charged in Count Three of the Information, it being understood that this Agreement does not bar the use of such conduct as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. §§ 1961 *et seq.* In addition, at the time of sentencing, the Government will move to dismiss any open Counts against the defendant. The defendant agrees that with respect to any and all dismissed charges he is not a "prevailing party" within the meaning of the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law.

It is further understood that the defendant shall make restitution in an amount to be specified by the Court in accordance with 18 U.S.C. §§ 3663, 3663A, and 3664. This amount shall be paid according to a plan established by the Court. The defendant agrees that the obligation to make such restitution shall be made a condition of probation, *see* 18 USC §3563(b)(2), or of supervised release, *see* 18 USC §3583(d), as the case may be.

In consideration of the foregoing and pursuant to United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") Section 6B1.4, the parties hereby stipulate to the following:

## A. Offense Level

1. The Guidelines Manual in effect as of November 1, 2016, apply to Counts One, Two and Three of the Information in this case.

Count One

2.   Pursuant to U.S.S.G. § 2K2.4(b), the Guidelines sentence for Count One is the minimum term of imprisonment required by statute, and Chapters Three and Four of the Guidelines (other than U.S.S.G. §§ 3E1.1, 4B1.1 and 4B1.2) do not apply to that count of conviction.   Thus, Count One, the violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2, requires a mandatory minimum sentence of ten years (120 months) of imprisonment, to be imposed consecutively to any other sentence, including any sentence resulting from Counts Two and Three and any term of imprisonment that remains to be served by the defendant with respect to any prior sentence of imprisonment that has been imposed on the defendant.

Count Two

3.   Pursuant to U.S.S.G. § 2K2.4(b), the Guidelines sentence for Count Two is the minimum term of imprisonment required by statute, and Chapters Three and Four of the Guidelines (other than U.S.S.G. §§ 3E1.1, 4B1.1 and 4B1.2) do not apply to that count of conviction.   Thus, Count Two, the violation of 18 U.S.C. §§ 924(c)(1)(A)(iii), 924(c)(1)(C)(i) and 2, requires a mandatory minimum sentence of twenty-five years (300 months) of imprisonment, to be imposed consecutively to any other sentence, including any sentence resulting from Counts One and Three and any term of imprisonment that remains to be served by the defendant with respect to any prior sentence of imprisonment that has been imposed on the defendant.

Count Three

4.   Pursuant to U.S.S.G. §§ 2X1.1 and 2E1.1, the base offense level for Count Three is the greater of 19 and the offense level applicable to the underlying racketeering activity, each after application of Chapter Three, Parts A, B, C, and D of the Guidelines. Because the offense level for the underlying racketeering activity is greater, as per the below, it controls.

5.   Pursuant to U.S.S.G. § 2E1.1, Application Note 1, because there is more than one underlying offense, each underlying offense must be treated as if contained in a separate count of conviction for purposes of U.S.S.G. § 2E1.1(a)(2).

6.   Pursuant to U.S.S.G. § 3D1.1(a), because there are multiple underlying offenses, a multiple-count analysis must be performed for these offenses.

7.   Pursuant to U.S.S.G. § 3D1.2, each underlying offense comprises its own separate Group.

8.   The offense levels applicable to the underlying offenses are calculated as follows:

*Offense 1*

9.   The Guideline applicable to the first offense, involving the murder of Dykeem Etheridge, on or about January 24, 2011, in the vicinity of Courtlandt Avenue between 153rd and 154th Streets in the Bronx, New York, is U.S.S.G. § 2A1.2.   Pursuant to U.S.S.G. § 2A1.1(a), this offense qualifies as first degree murder, and the base offense level is 43.

*Offense 2*

10.  The Guideline applicable to the second offense, involving the attempted murder of rival CAC member Jamel Cobbs, a/k/a "Murder Mel," on or about July 3, 2011, in the vicinity of Park Avenue and 158th in the Bronx, New York, is U.S.S.G. § 2A2.1. Pursuant to U.S.S.G. § 2A2.1(a)(1), because the object of the offense would have constituted first degree murder, the base offense level is 33.

11. Pursuant to § 2A2.1(b)(1)(A), a two-level increase is warranted because the victim sustained serious bodily injury.

12. Accordingly, the adjusted offense level for the second offense is 35.

*Offense 3*

13.  The Guideline applicable to the third offense, involving the attempted murder of rival CAC member Felipe Blanding, a/k/a "Hump," between on or about August 7, 2010 and on or about November 22, 2010, in the vicinity of 150th Street near Courtlandt Avenue in the Bronx, New York, is U.S.S.G. § 2A2.1.  Pursuant to U.S.S.G. § 2A2.1(a)(2), because the object of the offense would have constituted first degree murder, the base offense level is 33.

*Offense 4*

14. The Guideline applicable to the fourth offense, involving the robbery of rival CAC associate Payne Brown, on or about January 24, 2011, inside a bodega located on Courtlandt Avenue near 154th Street in the Bronx, New York, is U.S.S.G. § 2B3.1. Pursuant to U.S.S.G. § 2B3.1(a), the base offense level is 20.

15. Pursuant to § 2B3.1(b)(2)(C), a five-level increase is warranted because a firearm was brandished or possessed.

16. Pursuant to § 2B3.1(b)(3)(A), a two-level increase is warranted because the victim sustained bodily injury.

17. Accordingly, the adjusted offense level for the fourth offense is 27.

*Offense 5*

18. The Guideline applicable to the fifth offense, involving the robberies of rivals of an illegal pill trafficker for financial compensation, from in or about 2010 through in or about 2012, in the Bronx, New York, is U.S.S.G. § 2B3.1.   Pursuant to U.S.S.G. § 2B3.1(a), the base offense level is 20.

19. Pursuant to § 2B3.1(b)(2)(C), a five-level increase is warranted because a firearm was brandished or possessed.

*Offense 6*

20. The Guideline applicable to the sixth offense, involving the assault of rival CAC member Javon Jones, a/k/a "Capo," in or about February 2015, within the Bureau of Prison's Federal Correctional Institution in Fairton, New Jersey, is U.S.S.G. § 2A2.3. Pursuant to U.S.S.G. § 2A2.3(a), the base offense level is 7.

*Combined Offense Level for Count Three*

21. In calculating the combined offense level for Count Three, pursuant to U.S.S.G. § 3D1.4, Offense 1 has the highest offense level, with an offense level of 43, and constitutes one Unit.  Pursuant to U.S.S.G. § 3D1.4(b), Offense 2 is from five to eight levels less serious than Offense 2 and, therefore, counts as an additional one-half Unit.  Pursuant to U.S.S.G. § 3D1.4(c), Offenses 3 through 6 are nine or more levels less serious than Offense 1 and, therefore, will not increase the applicable offense level.  Based on the foregoing, Count One comprises a total of one and one-half Units.  Accordingly, the highest base offense level (of 43) is increased by one level.[1]

22. Accordingly, pursuant to U.S.S.G. § 3D1.4, the initial applicable Guidelines offense level for Count Three is 44.

23. Pursuant to U.S.S.G. § 3B1.1(c), a two-level increase is warranted because the defendant was an organizer, leader, manager or supervisor of criminal activities in furtherance of the racketeering conspiracy charged in Count Three other than the types of criminal activities described in U.S.S.G. §§ 3B1.1(a) and (b).

24. Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a).  Furthermore, assuming the defendant has accepted responsibility as described

---

[1]    The parties agree that the defendant's conduct relating to the murders of Curtis Smith, Devon Jackson, and Taisheem Ferguson, as described above, does not affect the defendant's Guidelines offense level for Count Three, but that such conduct constitutes either relevant conduct under Guidelines Section 1B1.3, or other conduct of the defendant under Guidelines Section 1B1.4, that the Court may consider at the time of sentencing.

in the previous sentence, an additional one-level reduction is warranted, pursuant to U.S.S.G. § 3E1.1(b), because the defendant gave timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

25. Accordingly, the applicable offense level for Count Three is 43.

## B. Criminal History Category

Based upon the information now available to this Office (including representations by the defense), the defendant has five criminal history points, calculated as follows:

1. The defendant pleaded guilty on or about September 27, 2013, in the United States District Court for the Southern District of New York, to participating in a conspiracy to distribute 28 grams and more of crack cocaine in the vicinity of Maria Lopez Plaza in the Bronx from in or about November 2011 through in or about December 2012, resulting in a sentence of sixty months of imprisonment to be following by forty-eight months of supervised release.[2] Pursuant to U.S.S.G. §§ 4A1.1(a)(1) and 2E1.1 (Application Note 4), three criminal history points are added for this prior sentence.

2. Because the defendant participated in one of the instant offenses of conviction while under a criminal justice sentence, two criminal history points are added under U.S.S.G. § 4A1.1(d).

In accordance with the above, the defendant's Criminal History Category is III.

---

[2]     This conviction was based on the defendant's participation in a conspiracy with other members of the YGz Racketeering Enterprise to distribute 28 grams and more of crack cocaine in the vicinity of Maria Lopez Plaza near Morris Avenue and 151st Street in the Bronx, New York, including the commission of an assault on or about May 1, 2012 of a drug customer of that narcotics conspiracy by hitting this drug customer with a gun in the vicinity of Maria Lopez Plaza. Although the narcotics-related conduct reflected by this prior conviction constitutes part of the pattern of racketeering activity that forms the basis for the instant offense of conviction set forth in Count Three of the Information, under Guidelines Sections 2E.1.1 (Application Note 4) and 4A1.2(a)(4), such narcotics-related conduct is treated as a prior sentence (yielding criminal history points under the Guidelines), rather than as part of the instant offense of conviction (for purposes of calculating the applicable Guidelines offense level for Count Three). The parties agree that such narcotics-related conduct constitutes either relevant conduct under Guidelines Section 1B1.3, or other conduct of the defendant under Guidelines Section 1B1.4, that the Court may consider at the time of sentencing.

### C. Guidelines Sentence

Based upon the calculations set forth above, the defendant's Guidelines sentence on Counts One and Two of the Information is 420 months' imprisonment, and his Guidelines sentence on Count Three of the Information is 60 months' imprisonment,[3] for a collective stipulated Guidelines sentence of 480 months' imprisonment, with a mandatory minimum term of 420 months' imprisonment (on Counts One and Two) that must be imposed to run consecutively to any other sentence, including any term of imprisonment imposed on Count Three and any term of imprisonment that remains for the defendant to serve pursuant to any prior sentence that has been imposed on him (the "Stipulated Guidelines Sentence").

The parties agree that under Section 5G1.3(a) of the Guidelines, any term of imprisonment imposed on Count Three of the Information shall be imposed to run consecutively to any undischarged term of imprisonment resulting from the defendant's prior federal narcotics sentence, which is described above, because the defendant's participation in the instant offense charged in Count Three continued while the defendant was serving that prior federal narcotics sentence.

The parties agree that neither a downward nor an upward departure from the Stipulated Guidelines Sentence set forth above is warranted. Accordingly, neither party will seek any departure or adjustment pursuant to the Guidelines that is not set forth herein (including, but not limited to, any departure under U.S.S.G. § 5K2.23 for the period of incarceration that the defendant served on his prior federal narcotics sentence, which is described above). Nor will either party in any way suggest that the Probation Office or the Court consider such a departure or adjustment under the Guidelines.

The parties agree not to seek a sentence other than the Stipulated Guidelines Sentence of 480 months' imprisonment, with a mandatory minimum term of 420 months' imprisonment on Counts One and Two of the Information that must be imposed to run consecutively to any other term of imprisonment imposed, or suggest in any way that the Probation Office or the Court consider a sentence other than the Stipulated Guidelines Sentence.

Except as provided in any written Proffer Agreements that may have been entered into between this Office and the defendant, nothing in this Agreement limits the right of the parties (i) to present to the Probation Office or the Court any facts relevant to sentencing; (ii) to seek an appropriately adjusted Guidelines range if it is determined based upon new information that the defendant's criminal history category is different from that set forth above; and (iii) to seek an appropriately adjusted Guidelines range or mandatory minimum term of imprisonment if it is subsequently determined that the defendant qualifies as a career offender under U.S.S.G. § 4B1.1. Nothing in this Agreement limits the right of the Government to seek denial of the adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, regardless of any stipulation set forth above, if

---

[3]     Based on the calculations set forth above, the defendant's Guidelines sentence is life imprisonment for Count Three of the Information, but Count Three is subject to a statutory maximum of 60 months of imprisonment under Title 18, United States Code, Section 371. Accordingly, the defendant's stipulated Guidelines sentence for Count Three is 60 months of imprisonment.

the defendant fails clearly to demonstrate acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence. Similarly, nothing in this Agreement limits the right of the Government to seek an enhancement for obstruction of justice, *see* U.S.S.G. § 3C1.1, regardless of any stipulation set forth above, should it be determined that the defendant has either (i) engaged in conduct, unknown to the Government at the time of the signing of this Agreement, that constitutes obstruction of justice or (ii) committed another crime after signing this Agreement.

It is understood that pursuant to U.S.S.G. § 6B1.4(d), neither the Probation Office nor the Court is bound by the above Guidelines stipulation, either as to questions of fact or as to the determination of the proper Guidelines to apply to the facts. In the event that the Probation Office or the Court contemplates any Guidelines adjustments, departures, or calculations different from those stipulated to above, or contemplates any sentence other than the Stipulated Guidelines Sentence, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same.

It is understood that the sentence to be imposed upon the defendant is determined solely by the Court. It is further understood that the Guidelines are not binding on the Court. The defendant acknowledges that his entry of a guilty plea to the charged offenses authorizes the sentencing court to impose any sentence, up to and including the statutory maximum sentence. This Office cannot, and does not, make any promise or representation as to what sentence the defendant will receive. Moreover, it is understood that the defendant will have no right to withdraw his plea of guilty should the sentence imposed by the Court be other than the Guidelines Sentence set forth above.

It is agreed (i) that the defendant will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241; nor seek a sentence modification pursuant to Title 18, United States Code, Section 3582(c), of any sentence at or below the Stipulated Guidelines Sentence of 480 months' imprisonment, with a mandatory minimum term of 420 months' imprisonment on Counts One and Two of the Information that must be imposed to run consecutively to any other term of imprisonment imposed, and (ii) that the Government will not appeal any sentence at or above the Stipulated Guidelines Sentence. This provision is binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. Furthermore, it is agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation. The parties agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with the undischarged portion of any other sentence of imprisonment that has been imposed on the defendant at the time of sentencing in this case. The defendant further agrees not to appeal any term of supervised release that is less than or equal to the statutory maximum. Notwithstanding the foregoing, nothing in this paragraph shall be construed to be a waiver of whatever rights the defendant may have to assert claims of ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise. Rather, it is expressly agreed that the defendant reserves those rights.

The defendant hereby acknowledges that he has accepted this Agreement and decided to plead guilty because he is in fact guilty. By entering this plea of guilty, the defendant waives any and all right to withdraw his plea or to attack his conviction, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material, *Jencks* Act material, exculpatory material pursuant to *Brady* v. *Maryland*, 373 U.S. 83 (1963), other than information establishing the factual innocence of the defendant, and impeachment material pursuant to *Giglio* v. *United States*, 405 U.S. 150 (1972), that has not already been produced as of the date of the signing of this Agreement.

The defendant recognizes that, if he is not a citizen of the United States, his guilty plea and conviction make it very likely that his deportation from the United States is presumptively mandatory and that, at a minimum, he is at risk of being deported or suffering other adverse immigration consequences. The defendant acknowledges that he has discussed the possible immigration consequences (including deportation) of his guilty plea and conviction with defense counsel. The defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction, even if those consequences include deportation from the United States. It is agreed that the defendant will have no right to withdraw his guilty plea based on any actual or perceived adverse immigration consequences (including deportation) resulting from the guilty plea and conviction. It is further agreed that the defendant will not challenge his conviction or sentence on direct appeal, or through litigation under Title 28, United States Code, Section 2255 and/or Section 2241, on the basis of any actual or perceived adverse immigration consequences (including deportation) resulting from his guilty plea and conviction.

It is further agreed that should the conviction following the defendant's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the Government has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

Apart from any written Proffer Agreements that may have been entered into between this Office and defendant, this Agreement supersedes any prior understandings, promises, or conditions between this Office and the defendant.  No additional understandings, promises, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties.

Very truly yours,

JOON H. KIM
Acting United States Attorney

By: _____
Samson Enzer
Gina M. Castellano
Andrew C. Adams
Assistant United States Attorneys
(212) 637-2342

APPROVED: _____
Micah W.J. Smith / Michael Gerber
Co-Chiefs, Violent and Organized Crime Unit

AGREED AND CONSENTED TO:

_____
KAREEM LANIER

_____
DATE  6/12/17

APPROVED:

_____
GLENN A. GARBER, Esq.
MITCHELL J. DINNERSTEIN, Esq.
Attorneys for Kareem Lanier

_____
DATE  6/12/17

Rev. 07.20.2016